121 So.2d 417 (1960)
MIAMI BEACH FIRST NATIONAL BANK, a Banking Corporation Organized under the Laws of the United States, Petitioner,
v.
R.J. EDGERLY and Elizabeth Edgerly, Respondents.
Supreme Court of Florida.
June 8, 1960.
*418 Blackwell, Walker & Gray, Miami, for petitioner.
Anderson & Nadeau, Miami, for respondents.
O'CONNELL, Justice.
On motion of the petitioner, Miami Beach First National Bank, the District Court of Appeal, Third District, has certified that its decision in this cause, reported as Edgerly v. Schuyler, Fla.App. 1959, 113 So.2d 737, is one which passes upon a question of great public interest "because the decision involves an important new point of law relating to certain rights of depositors in banking institutions." We therefore have jurisdiction to consider the cause on certiorari. See Susco Car Rental System of Florida v. Leonard, Fla. 1959, 112 So.2d 832.
Petitioner, both in its motion to certify a question of great public interest filed in the district court and in its brief filed with this Court, urges that the question to be answered by this Court is:
"Whether, in the absence of fraud on the part of a bank, the statute of limitations begins to run against the depositor's cause of action to recover on a check bearing a forged endorsement upon receipt of the depositor's statement and return of the cancelled checks."
In its opinion the district court stated the question to be [113 So.2d 740]:
"When does a cause of action accrue to a depositor against his bank for the wrongful payment of a check upon a forged endorsement?"
We think the answer to both questions is the same and that the decision of the district court correctly answered them, saying in 113 So.2d at page 741 of its opinion:
"* * * the period of the statute of limitations begins to run from the discovery of the forgery by the depositor unless it can be demonstrated to the satisfaction of the trier of fact that at an earlier time the depositor would have discovered the forgery if he had exercised ordinary business care. The determination of the time for the beginning of the period of the statute of limitations becomes a question of fact * * *."
The district court then held that the limitation prescribed in § 95.11(5) (e), F.S.A., was applicable to an action such as here involved.
The facts of this cause are set forth in the opinion of the district court under review. We will not delve into them here except to say that the cause originated as a suit on a $20,000 promissory note brought by the Edgerlys against the Schuylers and Schmuklers, as makers and endorsers of the note. During the course of the proceedings *419 in the trial court the defendants, or one of them, denied execution of the note and denied receipt of a $20,000 check drawn by the Edgerlys on the petitioner-bank, payable to Sam Schuyler, who denied endorsing the check. The bank was made a party defendant and charged with having wrongfully paid the check and charged it to the Edgerlys' account, on a forged endorsement. The bank was not joined in the suit until more than five years after the payment by it of the check on the allegedly forged endorsement. The trial judge held that the action against the bank was barred by the statute of limitations and granted summary judgment in favor of the bank.
The district court reversed the trial court for the reasons given in that portion of its opinion above quoted.
We are convinced, after careful study of the briefs and authorities cited by the parties, and after independent research made by us, that the rules of law announced by the district court are sound and fair. We hereby approve them.
While it may seem to some that the result of the rule which holds that the statute of limitations does not begin to run until the depositor discovers, or by the exercise of ordinary business care would have discovered, that the endorsement is a forgery may be unduly harsh in its effect on banking institutions, it does not in fact place any new burden on such institutions. As a matter of fact we think it is less harsh than the rule followed in some jurisdictions. In considering the fairness of the rule in question it must be remembered that the law unquestionably places upon a bank the duty to ascertain the genuineness of endorsements on checks presented to it for payment and to pay the proceeds of the check only to the payee, or to those as directed by him through endorsement thereon. The law is well settled that if a bank pays a check with a forged endorsement it pays out its own funds, not those of the depositor. Reason and logic, as well as the law, dictate that this be so for a check is but an order to a bank to pay a specified sum to a named person. It is the unconditional duty of the bank to pay the money only to the payee, or his order, and it is the responsibility of the bank, solely, to determine the genuineness of the endorsement and the identity of the person presenting the check for payment. When the check is presented for payment the bank has ample opportunity to do these things, whereas the maker of the check has no such opportunity.
It is true that the maker has the opportunity to view the endorsement when the check is returned to him, after payment by the bank, but unless the maker be extraordinarily observant of and have unusual acquaintance with the signature of the payee he will be unable to determine whether the endorsement is or is not a forgery.
He can, of course, detect any forgery of his signature and that of those authorized to draw on his account, as well as any alteration of the name of the payee or the amount of the check, but he cannot and should not be held to know the signature of the payee who is required to endorse the check. Many checks are written to payees who are not, and whose signatures are not, personally known to or have ever been seen by the maker.
It is because the maker can, and has some responsibility to, detect forgeries of his name, the name of the payee, and the amount of the check as they appear on the face thereof that the rule of law pertaining to the rights and responsibilities of the depositor-maker in such cases is different from that which applies to cases involving a forged endorsement.
We think that the rule which sets the applicable statutory period of limitation to running only at the time the maker receives, or by exercise of reasonable business care would have received, notice that the endorsement is forged gives to the banks all the protection which can reasonably be expected in view of their absolute obligation to pay out the money of a depositor only *420 upon presentation of a check properly drawn by the depositor and endorsed by the payee named therein.
This doctrine, which can be referred to as the "blameless ignorance" doctrine, under which the statute of limitations begins to run only upon discovery of the fact that a right, which will support a cause of action, has been invaded, is not new in this State. It has been utilized in the City of Miami v. Brooks, Fla. 1954, 70 So.2d 306, and Franklin Life Ins. Co. v. Tharpe, 1938, 131 Fla. 213, 179 So. 406, both being cited in the district court's opinion, and more recently in the case of Seaboard A.L.R. Co. v. Ford, Fla. 1957, 92 So.2d 160.
As pointed out by the district court in its opinion, the Edgerlys, now respondents in this Court, argued in that court that § 674.25, F.S.A., provides a special statute of limitations controlling actions on forged instruments, and that because thereof the provisions of § 95.11, F.S.A., are not applicable. The Edgerlys present this argument to us although they did not file cross-assignments of error. While we are not obligated to consider this question posed by the Edgerlys we have done so because it was necessary to a determination that the district court reached the correct conclusion on this point in its decision.
We think that the district court was correct in holding that § 674.25 does not establish a special statute of limitation, but rather relates only to the effect and enforceability of negotiable instruments bearing a forged signature.
Further, we think that the district court was correct in holding that § 95.11(5) (e), F.S.A., is the applicable statute of limitations for the reasons expressed in its able opinion.
In connection with the last mentioned point, in our research we considered § 659.35(1), F.S.A., as to its applicability to situations such as involved here. We asked both parties to submit supplemental briefs dealing therewith. We are indebted to counsel for this extra effort.
We concluded after thorough study and research that § 659.35(1) which reads:
"(1) Unless written objection thereto shall have been theretofore delivered by the depositor to the bank, a statement of account rendered by any bank or trust company in this state to a depositor, accompanied by vouchers which are the basis of debit entries in such account, shall, after the expiration of three years from the date rendered, be conclusively presumed to be correct and the depositor shall thereafter be barred from questioning same."
does not apply to bar actions against a bank for paying out money of a depositor on a forged endorsement of a check, but rather operates only to obligate a depositor to notify his bank of mathematical or accounting errors shown by the bank's statement; if the depositor does not make written objection to the statement within three years of receipt thereof he is thereafter barred from questioning its correctness. Because our comment on this question is obiter dictum, we will not cite the reasoning or authorities in arriving at our conclusion thereon.
We make clear that neither this Court nor the district court has held that the respondents' claim against petitioner may not be found to be barred by the applicable statute of limitations. Rather all that has been held is that the statute did not begin to run until the depositors knew, or in the exercise of ordinary business care would have discovered, that the endorsement on the subject check was forged, which is a question of fact to be determined by the trier of fact.
In the proceedings to follow in the trial court the petitioner-bank will have full opportunity to show, if it can, that the Edgerlys, as makers of the check in question, either knew or by exercise of ordinary *421 business care would have learned that the endorsement on the check was not genuine at a time three years prior to the joinder of the bank in the suit, so as to bar the cause under § 95.11(5) (e), F.S.A.
On the other hand, if it cannot be shown that the Edgerlys did know, or by the exercise of reasonable business care would have learned, in that period of time, that the endorsement was forged, then the rule announced by the district court and approved by us would protect them against the running of the statute.
For the reasons expressed hereinabove the decision and the opinion of the district court of appeal is affirmed.
THOMAS, C.J., TERRELL, DREW and THORNAL, JJ., and McCRARY, Circuit Judge, concur.
ROBERTS, J., dissents.